For the record, my name is Howard Phillips Johner, and I represent Mr. Terry LaMelle Ezell, the appellate in this case. You may proceed. Thank you very much. I guess my first thing I want to mention to the court is my appreciation for the court allowing me to clarify the issues in this matter, the ACCA, the Armed It's very complicated, and I think we've boiled our issues down to basically three main points, and I'd like to address those points today. There's some suggestion in the briefs, I thought, that even without the armed career criminal, the guideline sentencing range itself would be up where it wound up. Is that correct? And I understand that to be the position of the government, John, that's not our position. Our position is that if the ACCA, that is the Armed Career Criminal Act, is not applicable, it's not applicable by this court, and that the offender, the offender, Criminal Offender Act is applicable, that the government is saying the standard range would be the same, therefore this issue is moot and it makes no difference. Our position is that that provision, that is the career offender allows for acceptance of responsibility, which would lead to a reduction of the sentencing guidelines if the court found my client accepted responsibility. And it relates directly to the drug charge, which is the charge where my client testified during trial that he admitted to the drug count, therefore there would be an acceptance of responsibility provision that would be available to the trial court if this court remanded it back. So there is a real possibility that my client would get a lesser, could get a lesser... Well, you rely heavily on Begay. No, ma'am. I did, Your Honor. I apologize to the court for that. But now you've changed your mind? Yes, yes, ma'am. Because it would seem to me you were addressing it. I mean, Begay talks about the violent felony in terms of the threatened use of physical force against, as far as that goes, but the statute sets out that a burglary satisfies it. Absolutely correct, Your Honor. And I guess my position, that's why I was asking, saying my initial thought was clarification is very important and we appreciate that, the opportunity to do this. Because I think the Begay case does, though, give an example of what the type of people that the statute is going after, the kind of violence that would bring a gun to a burglary. Well, it does, but burglary is specifically listed under there. So that under the, and so it doesn't, you know, why, you know, a lot of people don't think a burglary is violent, but this section says the burglary qualifies. So then your next issue is that whether the evidence that was presented, whether it, whether under the categorical or the modified categorical, it would satisfy that. And it's my understanding, Your Honor, that the government concedes that the Washington statute is broader than the generic burglary. Well, they say that it is, but they also say that the complaint narrows it and that what he had entered a plea to then, and that's a way to satisfy it. And my position, Your Honor, is that the complaint should not be given the weight that the government is giving in this case, but instead the plea statement, that is the statement that was adopted by the defendant, according to Shepard, that would be the operative language that we'd be looking at. It was the plea statement, not necessarily the information, because I think there's a Sixth Amendment issue as well as a post-Booker issue. If the court looks through the information and makes a finding that this incident occurred, and there's, for instance, that there was an address, therefore it's a building and that sort of thing, the court would be making that decision. And our position is that that would be in violation of the Sixth Amendment and post-Booker. But what cases do you have to support that? I mean, it seems that there's cases to the contrary that say that the complaint's admissible when taken with the plea, that if that tells us that it would qualify under that section, then that's enough. If it doesn't, let's say had it only said the statute but it didn't have an address or it didn't have a statute and a name and a residence, then your argument floats. Shepard page 13, Your Honor, I think is the case that we would rely on for that proposition, because it says other documents that the defendant has adopted. Once the defendant has adopted, then the Sixth Amendment issue is gone. There's no way the government can argue that my client adopted the information. And in fact, the charging document is very limited in its applicability for one reason, because a defendant could be charged with a burglary, but a jury could find him guilty of a criminal trespass or lesser included. Did the complaint address or list the addresses of the two burglary places where the burglary was? I believe so, Your Honor. And he pleaded guilty to that? Well, Your Honor, that's why we're asking the court to look at what he actually pled guilty to. The first burglary that occurred in March of 1981, first of all, we're dealing with cases that were back in 1987. The first burglary was in 1987. I believe that the complaint did list the actual address. But our position in the first burglary is that my client did not enter a building with the intent to commit a crime, but that if you look at the police statement, he says that he entered the office of the church with the thinking that he would commit some sort of crime. So we would analogize that to case law, like the Sparks case, that talks about one entering a locker, a storage locker, not being charged with actually entering the apartment building, but burglarizing the locker. And that was held not to be sufficient to support an ACCA enhancement. So that's our position on that case. Our position on the second case, that is the alleged residential burglary, is that if you look at the statement of the defendant on plea of guilty there where he adopted the language, what he talks about is I entered a building with the intent to commit a crime, nothing more. There's no address. There's no indicia that there was a serious risk of harm or to anyone else on that. So what's before the court? I suspect the government will come and bring a lot of factual things and invite this court to consider my client's prior conduct as he's just a dangerous, nasty man, which is inappropriate in this case because we're dealing with a legal issue, and the legal issue is what's properly before this court. What's properly before this court are not recitations of how he's treated other people in the past in domestic violence situations, but what documents will support or are available to support. I agree with you to that extent. But where I'm disagreeing with you is we're confined to the documents that were entered in the record, which is the complaint and the plea of guilty, and I don't see how those hooked together can defeat that he pled guilty to a burglary that would qualify under the ACA. Well, I guess my first point, Your Honor, the complaint is not dispositive because of information. A jury could find a person guilty of a lesser included notwithstanding what's in the complaint. But he pled guilty to the complaint. When you plead guilty to the complaint, you're accepting the complaint as it is and you're admitting those elements. I apologize, Your Honor, but if the court looked at this government's supplemental excerpts of record, what is in there is a lot of other material, like the certificate of probable cause and that sort of thing. But our position is that if there is an ambiguity between the complaint, that is the charging document, and what the defendant actually pled to, and this was 1987, then that ambiguity, the rule of lenity, should rule. What's the ambiguity here? The address is given for these two. Your argument is there hasn't been a showing that it was a building under the modified categorical approach. Yes, sir. But he pleaded guilty to a complaint in which there were addresses listed as to where the burglaries occurred. And to get an address, you've got to have a building. And that seems to answer the problem right there. Well, Your Honor, I appreciate the Court's position on that. I guess I would just ask the Court that the wording, the language in Shepard, is not something that should be just superfluous, that the language says, adopt other documents that are adopted by the defendant. The information isn't necessarily adopted by the defendant, merely by him pleading to the charge, simply because a jury could have found him guilty of a lesser included. In one case, with regard to the church, you said he went into the office in this other statement, that he was in the office. Yes, sir. But that's a building, isn't it? I mean, what good is that doing? Well, Your Honor, I guess we would analyze that again to, like, the Sparks case that talks about a locker. And when he talked to the lady at the house for the resident, that's a resident. That's not before this Court, Your Honor. I think the document's before the Court. The government has provided that information, that he talked to the resident and that sort of thing. But you were trying to offer that to somehow say this really wasn't a building. No. What I'm saying there in regarding that particular burglary, Your Honor, was that it was not a residence. It was a nonresidential burglary, which requires the modified categorical approach, then requires a further analysis past just the categorical approach. So that's what I'm saying there, that his plea, that is, to the second burglary, that is, in July, was to the residence. It still would be a burglary under the statute if it were a building, wouldn't it? It would be a burglary. It could be a burglary under the statute of a building, Your Honor. And there is clear, there is case law that says merely because it's a building doesn't necessarily mean that it's a burglary that fits within the, that's where the ACCA is applicable. So the building, just because it's being a building, the issue is not done there. Then you look to the potential risk of harm to others. And the question is, what does this court have before it, appropriately before it, not necessarily what the government has provided in their briefing and in their excerpts of records, what's properly before it, and what's properly before it was decided in Shepard. And Shepard says that it does mention charging documents, Your Honor, but it also, the last part of that, the statement in Shepard on page 13 talks about documents adopted by the defendant. That's how we get over the Sixth Amendment issue. And that's how we get over the post-Booker issue. Otherwise, the court will be making a factual determination that this was a residence, one, and factual determination that this had an address, therefore. And there is Kilgore, the site, the case, Kilgore said that that is sufficient. But our position is that if you really look at Shepard, the information is not, standing alone is not sufficient. And if there is a disconnect or an ambiguity between the plea statement made by the defendant and the information, then the rule of validity should apply, and my client should get the benefit of the rule of validity, and the reading should go in his favor. Do you want to save some time for rebuttal? Yes, ma'am. All right. Thank you, Your Honor. Good morning. Good morning. May it please the Court. My name is Andy Colasuro, and I'm representing the United States in this matter. There are three issues before the Court, and I'll address the Armacourt Criminal Act. Your Honor was correct. The government ultimately feels that it doesn't matter whether or not he does qualify because the guideline range would be the same. We believe the district court made the proper determination at the time, but even if the court didn't, the guideline range would still have been 262 to 327 months because he qualified as a career offender for the drug offense in count one. As a career offender, the offense level was 34. That was the guideline range. And the defendant conceded that the two convictions, the assault and the burglary in 94 and the assault two in 91, qualified as crimes of violence. Well, okay. The language that I have is that the information on one of the 1987 burglary conviction, the information charged him with entering and remaining unlawfully in the building, the Church of Seattle, located at 6900 Woodland, Seattle, with the intent to commit a crime against a person and property therein. And he pled guilty to the crime, quote, as charged in the information, unquote, and specifically admitted to unlawfully entering the business office of the Church of Seattle and while inside considered the possibility of stealing something, unquote. Am I wrong on that? No, you're correct. Okay. And then the other one, what I have, is the July of 1987 conviction, the information charged that Esel, quote, did enter and remain unlawfully in a building, McDevitt Residence, located at 1000 East Blaine, Seattle, with the intent to commit a crime against the person or property therein. That he pled guilty, quote, as charged in the information, unquote, and admitted in the plea to, quote, entering a building without permission with the intent to commit theft, unquote. Additionally, in the defendant's statement of defendant on plea of guilty, it makes reference to the information to which he's pleading guilty. So for the reasons you've just stated, under Kilgore, if there is a street adjust provided, that is sufficient to establish that it was a building and not some of the other areas like fenced areas or carbon containers, railway cars that make the Washington statute overbroad. But because you don't have to look at anything else. You just look at the complaint and the plea. Well, there has to be something besides the complaint. Because you ran that problem in Winner where they just had the information but didn't have a statement of defendant on plea of guilty, didn't have a judgment that would show that the individual pled guilty to that particular charging document. Here you have the additional documents which explain that he pled guilty to that particular charging document, which lists those addresses. And it's important to keep in mind that because the defendant conceded the assault two and burglary in the first degree from 1994 and the assault two in 1991, the government only needs to establish one of those two burglaries that are at issue as a violent felony in order for him to qualify. And then again, getting back to the earlier point, even if he doesn't fall, even if for some reason he doesn't qualify as an armed criminal, he still qualifies based on their concession and not fighting that on appeal. He was a career offender. Gives you the same guideline range. And the sentence that the court ultimately imposed within that guideline range was reasonable. It seems that Mr. Izzell has some psychological problems. So if we conclude that the district court did not fully consider these at sentencing, do we have to remand? If you believe the court didn't fully consider them, then I think that that would probably be appropriate. But I think the court, it was clear that the court did consider them. There's a couple things. First, the court, when it was making its, when it was talking about the defendant's mental conditions, he said whether or not his mental condition is any justification for his actions or whether or not that in any way predisposes him to engage in this behavior is a huge jump. And the court specifically found that he wasn't under, wasn't, didn't have the mental condition that he proposed to have, which was this parasomnia or sleepwalking at the time of the events. He wanted the court to believe that from the time he went home and fell asleep, he was asleep and not aware of his actions until he saw the officer's lights behind him. Well, the court, after listening to the testimony and then listening to the experts, determined and found that the defendant was basically, had woken up, called his wife. They got into an argument, started to damage things within the home. The wife then threatened to call the police and that the defendant, aware of what he was doing, fearing that the police were going to be coming soon, packed up all these items, including the cocaine, including the gun and all the other items that were found in the car and left the residence. So it's clear that the court didn't see that this condition contributed to this offense, first and foremost. But then there's another couple times where the court made reference to it. First, the court said this court is not discounting his mental issues at all. The fact that he does have some sort of sleep disorder, taking that into account. The court has looked at his background, his history. Yes, it has not been easy. The flip side is that for the last 25 years, he's run rampant through this community, leaving victims in his wake every step of the way. And the minute he gets out, the minute he gets done with his sentence, he goes right back to committing crimes. Later, the court said, aside from simply the number of offenses and the types of offenses that we're talking about, the court is seriously concerned about his violent predilection, whether or not he suffers from any parasomnia, any sleep disorder, any mental issues. Not the point. The point is that he displays conscious, interactive behavior at the time when he engages people and many of his victims end up suffering the wrath of his anger and his assaults. And I think when you're looking at whether or not the court acted reasonably in imposing the sentence, you obviously have to look at the defendant's history, the nature of the offenses, the fact that the court felt that there was a sincere need to protect the community. And if you look at the guidelines, you know, the Section 5K2.13, that kind of previously kind of guided the court about departures but now is discretionary like the rest of the guidelines, it requires that or says that a departure may be warranted if the person is suffering from a significant impairment and that impairment substantially contributes to the offense. Again, the court didn't find that he was suffering from a significantly reduced mental capacity nor that it contributed to the offense, as indicated by the court saying there was a huge jump to say that what happened was a result. In addition, that section itself provides an exception where it states the departure isn't appropriate if there is, based on the defendant's criminal history, a need to incarcerate the defendant to protect the public. And that's what you have here. So I think for all those reasons, the sentence was reasonable. The last issue with respect to the evidence, you have to keep in mind that this was a bench trial. The court was aware of the information that it was hearing about all the other things in the car and made that through other means. That wasn't technically a motion to suppress. It was essentially a motion to exclude is what we have before us. Yes. So we're reviewing that for what? Abuse of discretion. Abuse of discretion. Right. And as we stated in the brief, it was important, that information, the items within the car, the nature and the amount of the items, was important to establish his knowing possession of the firearm, his statements about the receipts connected him to the bag and the bag where the gun was found. So that connected him to the gun. With respect to all the other items. He also used it to show that he knew that, you know, he was trying to get inculpatory evidence out of the house, you know, all the credit cards and the machines and all of that sort of thing as he made his flight. Exactly. That related to whether he was in this fugue state or paransomnia, whatever you call it. Again, the second reason why it was relevant was to attack defense theory, which was I was asleep at the time, I was unaware of what I was doing, and I was grabbing these things randomly, grabbing things randomly and putting them in the car and showing that all these things were all incriminating and all kind of related to one another, was important to establish that, no, you grabbed these items deliberately. And even if, again, that was error, it wasn't error that would affect the verdict in that on the drug charge you have his admission that he received the drugs from someone in exchange for the sale of a car and he intended to give them back. He admitted all the elements in his own statement. Also, with the firearm charge, you have the testimony of his wife that he had this firearm, slept with it under his pillow, and had had it for an upwards of a year or better. All right. No further questions. I'll rest. Don't appear to be further questions. Thank you for your argument. You have a little over three minutes and change for rebuttal. I appreciate that, Your Honor. Thank you. First of all, Your Honor, I guess I would address an issue that came up earlier, and that is U.S. v. Matthews at 880, the court noted, some burglars of non-abandoned buildings that are not dwellings might have involved conduct that presents a sufficient serious risk of physical injury to qualify them as crimes of violence under the otherwise clause. The court cannot find that all burglaries necessarily qualify, so I think the door is open to burglaries of non-residential buildings that would not necessarily qualify under the ACCA. The court brought up my client's mental condition, Your Honor, and that's why we went to trial, and that's why we spent three years going to trial. That's why my client was examined by Dr. Pasquale from the Swedish Sleep Center as well as Dr. Harris and engaged Dr. Appleton and Ty Hunter. He also had an EEG. I don't think it's any question that my client had mental issues, that is, parasomnic issues, as well as he would wake up at night and be stabbing his wife in his sleep. His wife mentioned that Sherry Ezel testified in trial that when he first returned home from prison, he went to the corner and urinated, got up from the bed, went and urinated in the corner. There was another incident, 7-11, where he was chased by a police officer for urinating. He would be sitting in a car. He really does have psychological issues. The problem that you face, however, is that the evidence was disputed at the trial, and we have to review this through the lens of giving the government the favorable inferences, and there was expert testimony that said some of his conduct was such, like getting a coat, meant he wasn't in a parainsomnia state because you don't, like, he knew he was cold. You know, getting up all the incriminating evidence, he just happens to do that, you know, and then there's, I mean, the whole thing starts with his wife's mad at him because he's once again stayed out all night with another woman, and then, you know, then she says, well, someone's going to go to jail, and he starts destroying things, and so, you know, it's disputed, but there's also evidence for the court to come to the conclusion that it came to, so that's hard on appeal. It's disputed by one person, Your Honor, Dr. Appleton, who, if the court would look at the record, one of the things I questioned Dr. Appleton about was he said my client was using alcohol, and that was part of his diagnosis. Cherie Exel, the wife, testified he never uses alcohol since high school. She's known him since high school. He doesn't use alcohol. Under cross-examination, I asked Dr. Appleton to describe in his contemporaneous notes, show us where he wrote down that my client was using, expressed that he was using alcohol. During an interview, Dr. Appleton did not, could not find it. Cherie Exel, though, the court found highly. I don't have much time, so you might want to sum up. I'm almost. Thank you. Thank you, Your Honor. I will sum up by saying, Your Honor, there's no question that he had a mental condition. The things that the court talked about as far as his mental condition, like he gets out of prison, the first thing that happens is that he gets back in trouble again. That's indicia of his mental condition. The fact that he has a 25-year record is indicia that he has an untreatable mental condition. It's been going on and on. Both of the violent cases. Not to belabor the point, but that's also called recidivism. It's called recidivism, Your Honor. And if it wasn't for the diagnosis of Dr. Pasquale, and I just finally want to point out that my client was, in fact, arrested. He was released, and then he sought further medical examination to find out what's wrong with him because of what had happened in this case. He was caught in his slippers. He was stopped by the police officer in his slippers. That's undisputed. So there's real issues there, Your Honor. And I don't think that Judge Martinez, with all due respect to Judge Martinez, gives full consideration to his mental condition that he should have. And we'd ask the Court to remand this matter back because the standard range or the guidelines range can be altered and changed because he did accept responsibility for the drug charge. All right. Thank you both for your argument. This matter will stand submitted.
judges: Canby, Thompson, Callahan